UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| SKYMONT FARMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 4:09-cv-77 |
| v. | ) | *Lee* |
| | ) | |
| SUZANNE NORTH, individually and d/b/a | ) | |
| Summitville Crop Insurance Agency, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Before the Court are two motions: (1) a motion for summary judgment [Doc. 38] filed by Defendant Richard Mackie ("Mackie"), sued individually and doing business as Summitville Crop Insurance Agency, and (2) a motion to consider late-filed exhibits [Doc. 51] filed by Plaintiffs Skymont Farms, Dusty Wanamaker, Anthony Wanamaker, and Catrenia Wanamaker in support of their opposition to the motion for summary judgment. For the reasons explained below, the Court will **GRANT** Plaintiffs' motion to consider late-filed exhibits and will **DENY** Defendant Mackie's summary judgment motion.

I.  **Motion to Consider Late-Filed Exhibits**

As a preliminary matter, Plaintiffs' motion to consider late-filed exhibits [Doc. 51] concerns the Court's consideration of certain exhibits filed a few minutes to an hour late by Plaintiffs in support of their response to Mackie's summary judgment motion [Doc. 43]. Plaintiffs represent, and Mackie does not dispute, that due to the size of the combined exhibits, they were initially rejected by the Court's electronic filing system. Plaintiffs then filed the exhibits separately, causing certain exhibits [Doc. 45, 46, 47, 48, 49, and 50] to be filed in the early morning hours of August 17, 2011, instead of August 16, 2011, the date Plaintiffs' response was due pursuant to the Court's Order

granting a joint motion to extend the time for Plaintiffs' response and Mackie's reply [Doc. 42]. Although Mackie urges the Court to reject the late-filed exhibits, the Court finds absolutely no valid reason for doing so under the circumstances. Accordingly, the Court **GRANTS** Plaintiffs' motion [Doc. 51], will regard the exhibits timely filed, and it will consider all of the exhibits filed in support of Plaintiffs' response.

## II. Motion for Summary Judgment

### A. Background Allegations

The Complaint [Doc. 1-1] alleges that Plaintiff Dusty Wanamaker ("Dusty") is the owner and operator of Skymont Farms Nursery ("Skymont Farms" or the "Nursery") and that Dusty's parents, Anthony and Catrenia Wanamaker ("Anthony" and "Catrenia"), are the former owners and operators of the Nursery [Doc. 1-1 at PageID#: 5]. The Wanamaker family owns several nurseries in the Grundy County and Warren County areas, and Defendant Summitville Crop Insurance Agency and its insurance agents, Defendants Suzanne North, Cindy Anderson, and Mackie, provided crop insurance services to the Wanamaker family for several years prior to the 2006 crop year [*id.* at PageID#: 6]. Plaintiffs allege that Defendants, including Mackie, were aware of the ownership structure of the nurseries owned by the Wanamakers and that Mackie was involved in discussions about transferring ownership of the Nursery to Dusty [*id.*]. As a result of this transfer, in late 2005, Defendants sold Dusty an insurance policy to cover the crops at the Nursery for the 2006 crop year [*id.* at PageID#: 6; Doc. 39 at PageID#: 159]. The insurance policy application was signed on September 30, 2005 by Dusty and Defendant North [Doc. 38-3] and the Plant Inventory Value Report ("PIVR") was signed by Dusty and Defendant North on the same date [Doc. 38-4]. The insurance policy was issued by NAU Country Insurance Company ("NAU") in conjunction with the

2

Federal Crop Insurance Corporation ("FCIC") and the Risk Management Agency ("RMA") [Doc. 1-1 at PageID#: 6].

On or about April 7, 2006, a hailstorm damaged the Nursery crops and Dusty filed a claim pursuant to the insurance policy issued by NAU [*id.* at PageID#: 7]. The RMA joined NAU in the adjustment process due to the size of the claim, but Dusty's claim was ultimately denied [*id.*]. As a result of the denial, Plaintiffs filed two separate cases: this case, against the insurance agency and the insurance agents, and another case in this Court, Civil Action No. 4:09-cv-65, against NAU, the FCIC, the RMA, and the United States Department of Agriculture. In the instant case, Plaintiffs allege Defendants negligently represented the issued insurance policy would cover the Nursery crops and negligently failed to obtain an insurance policy that would properly cover the crops at issue [*id.* at PageID#: 7-8].

### B. Affidavits and Deposition Testimony

Several members of the Wanamaker family have been deposed as part of the discovery proceedings in a companion case, Civil Action No. 4:09-cv-65, and excerpts from those depositions have been submitted in this case. Plaintiffs have also submitted affidavits and relevant deposition excerpts. Dusty stated in his affidavit that he, his parents, and other members of the family had discussions with Mackie about transferring the Nursery to him and getting the crops at the Nursery properly insured [Doc. 44 at PageID#: 205]. Dusty recalled these conversations taking place in the summer and fall of 2005, while the family was preparing to obtain insurance for the 2006 crop year, and stated that Mackie held himself out as an insurance agent for Summitville Crop Insurance Agency during that time, even signing an Application/Cancellation and Transfer Form on September 28, 2005 to facilitate the switch from Farmers Crop Insurance Alliance to NAU [*id.*]. Dusty testified

3

that he thought Mackie was the agent who dropped off the insurance policy forms for him to sign [Doc. 48 at PageID#: 246].

Anthony Wanamaker made similar statements about conversations with Mackie throughout the summer and fall of 2005 in his Affidavit and attached documents from the 2006 crop year for Dry Shave Nursery which indicate, as of November 3, 2005, Mackie was an insurance agent for "Summitville Crop Insurance"[1] [Docs. 49, 49-1, 49-2]. He also testified as to several conversations with Mackie about getting the various nurseries insured, how the Wanamakers followed Mackie's advice about how to insure the nurseries, and Mackie's awareness of the transition of Skymont Farms to Dusty and the necessary steps to take to insure the crop [Doc. 45 at PageID#: 211-16].

Catrenia Wanamaker testified that she and her husband, Anthony, had conversations with Mackie during which Mackie suggested they transfer nursery stock to their children to have it properly insured, and that Mackie specifically suggested transferring the Skymont Farms stock to Dusty, such that Mackie certainly knew that the Nursery stock belonged to Dusty [Doc. 50 at PageID#: 281-84, 288-91]. Catrenia testified that Mackie picked up nursery catalogs to attach to the insurance applications for three family-owned nurseries for the 2006 crop year and, because Skymont Farms did not yet have a printed catalog for that year, Mackie told her to take one of the catalogs for the other nurseries, mark out or white out the name of that nursery, and use that catalog for Skymont Farms [*id.* at PageID#: 268]. Catrenia further testified that Mackie told her it would

---

[1] As the Court will discuss further *infra*, it is unclear if "Summitville Crop Insurance" is the same entity as Defendant Summitville Crop Insurance Agency, although the Schedule of Coverage documents bear the same address, P.O. Box 189, Summitville, TN, as the address on Dusty's application for insurance during the 2006 crop year signed by Defendant North for "Summitville Crop Ins." [Doc. 38-3 at PageID#: 145]. Mackie referred to the insurance agency Defendant as "Summitville Crop Insurance Company" in his Affidavit [Doc. 38-1 at PageID#: 134]. For the purposes of clarity, the Court will refer to the entity as it appears on the page of the record cited.

4

be fine to pay the insurance premium for Skymont Farms out of the bank account for Dry Shave Nursery, owned by Anthony and Catrenia [*id.* at PageID#: 275].

Travis Wanamaker and Tim Wanamaker similarly stated that Mackie had discussions with various members of the family about obtaining crop insurance for the 2006 crop year throughout the summer and fall of 2005 [Docs. 46, 47]. Travis submitted documents for his nursery, dated June 20, 2006, showing Mackie as the agent for Summitville Crop Insurance [Doc. 46 at PageID#: 223-27]. Tim attached documents for his nursery, dated November 3, 2005, showing Mackie as the agent for Summitville Crop Insurance [Doc. 47 at PageID#: 233-37]. Tim also attached an undated letter from Mackie which solicits nursery policy renewals for the 2006 crop year [*id.* at PageID#: 232]. The letter's heading reads "Richard Mackie DBA Summitville Crop Insurance of the Southeast" and at the end, Mackie writes "I formerly was with Summitville Crop Insurance and now have my own office . . ." [*id.*].

Mackie submitted an affidavit in which he stated that his business partnership with Defendant Anderson, known as Summitville Crop Insurance Company, was dissolved sometime in late 2004 or early 2005 [Doc. 38-1 at PageID#: 134]. Mackie stated that he did not write any crop insurance policies for Plaintiffs in the 2006 crop year, did not sign any applications or receive compensation for insurance sales for that crop year, did not help prepare the PIVR for Plaintiffs for their 2006 crop year applications, and did not make representations to Plaintiffs about procuring crop insurance policies for the 2006 crop year or representations about any such policies [*id.* at PageID#: 135].

### III. STANDARD OF REVIEW

Summary judgment is mandatory where "there is no genuine dispute as to any material fact"

5

and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Anderson*, 477 U.S. at 248. A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Id.* at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907. A mere scintilla of evidence is not enough to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. James*, No. 7:09-CV-98 (HL), 2011 WL 837179, at *1 (M.D. Ga. Feb. 2, 2011). The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials

---

[2] Rule 56 was amended effective December 1, 2010, "to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56, Advisory Committee Note to 2010 Amendments. The 2010 amendments did not affect the standard for granting summary judgment, and earlier caselaw relating to that standard therefore remains good law. *Id.*

6

cited do not establish the absence . . . of a genuine dispute. *Id.* In reply, the movant may then attempt to show that the materials cited by the nonmovant "do not establish the . . . presence of a genuine dispute." *Id.* Either party may also attempt to challenge the admissibility of its opponent's evidence. *Id.*

The court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion. *Id.* If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

## IV. ANALYSIS

Mackie argues that he cannot be liable for any of Plaintiffs' claims because he was not involved in the process of procuring crop insurance policies for Plaintiffs for the 2006 crop year. Mackie first asserts that he cannot be liable for any claim for failure to procure insurance because he did not undertake to obtain insurance for Plaintiffs [Doc. 39 at PageID#: 164]. He argues Defendants Summitville and North were responsible for finalizing Plaintiffs' application and the materials to be submitted with the application [*id.*]. Mackie argues that he did not sign any of these documents, he did not sell the policy at issue, he was not compensated for selling any insurance policies to Plaintiffs for the 2006 crop year, and any reliance by the other Defendants on information he previously gathered from Plaintiffs does not make him liable for failure to procure insurance because he did not undertake that responsibility [*id.*]. Mackie further asserts that he cannot be liable for negligent misrepresentation because he made no representations to Plaintiffs about insurance

7

coverage for the 2006 crop year and, even if he had made representations, he was no longer affiliated with Defendant Summitville at the time of the alleged misrepresentations [*id.* at PageID#: 164-65].

Plaintiffs point out that Mackie failed to produce any documentary evidence concerning the dissolution of Defendant Summitville Crop Insurance Agency and his departure from it and they summarize the affidavits and deposition testimony which they contend establish a possible basis for Mackie's liability [Doc. 43 at PageID#: 192-98]. Plaintiffs further argue that Mackie's motion is premature because the parties have not yet conducted much discovery or taken depositions of any Plaintiffs or Defendants [*id.* at PageID#: 199].[3] Plaintiffs urge the Court to permit discovery before considering Mackie's motion [*id.*]. Nonetheless, Plaintiffs contend that Mackie has not established that there are no genuine issues of material fact because his assertion that he was not involved in the process of procuring insurance for Plaintiffs and made no representations to Plaintiffs is contradicted by the evidence submitted by Plaintiffs [*id.* at 200-01].

The Court finds that there is a genuine issue of material fact as to Mackie's involvement in Plaintiffs' process of obtaining insurance for the Nursery for the 2006 crop year. Although Mackie asserts in his Affidavit that he was no longer part of the Summitville Crop Insurance Company as of late 2004 or early 2005 [Doc. 38-1 at PageID#: 134], and Defendant Anderson responded to Mackie's Request for Admission and stated she believed the partnership ended in early 2005 [Doc. 38-2 at PageID#: 138], as Plaintiffs point out, the Court has no evidence before it establishing the true date of the dissolution. The Court does have before it, however, affidavits, deposition testimony, and a letter purportedly sent by Mackie, all of which create genuine issues of material fact with respect to Mackie's role in the procurement of insurance for Plaintiffs for the 2006 crop

---

[3] Plaintiffs did not, however, seek relief under Fed. R. Civ. P. 56(d).

year and Mackie's representations to Plaintiffs about that insurance.

For example, Catrenia testified that Mackie came to the family office to pick up catalogs for the three nurseries and, when Catrenia told him she did not have a catalog prepared for Skymont Farms, Mackie told her to use one of the catalogs for Dry Shave Nursery and to mark out the identifying information and replace it with information for Skymont Farms, including the name of the person who owned the nursery, the address, telephone numbers, and the year [Doc. 50 at PageID#: 268]. Catrenia testified that she was planning to create a new catalog for Skymont Farms, but after getting these instructions, she did what Mackie told her to do and trusted him to know what he needed to do to get the Nursery insured [*id.* at PageID#: 274, 277-78]. Moreover, Catrenia testified that Mackie told her it was fine to write the premium for the insurance policy on Skymont Farms out of the Dry Shave Nursery bank account [*id.* at PageID#: 275]. Finally, Catrenia testified to specific recollections of conversations with Mackie about transferring the Skymont Farms stock to Dusty and Mackie's encouragement to insure the Nursery in Dusty's name [*id.* at PageID#: 283-85].[4] Catrenia testified that these conversations occurred during the period of time in which Plaintiffs were insuring the nurseries for the 2006 crop year [*id.* at PageID#: 284-85]. Based on Catrenia's recall that no catalog had yet been created for Skymont Farms, there is at least an inference that any conversations about the nursery catalogs in the context of Dusty's ownership, which did not commence until the 2006 crop year, would have taken place in the course of preparing to insure the nurseries for the 2006 crop year.

Catrenia's recollection of the process to procure insurance for the 2006 crop year squares

---

[4] Whether or not Dusty had an insurable interest in the crop, given that he owned only the stock and not the underlying land and did not disclose his parents as having an interest in the stock on the insurance application, is a primary issue in the companion case, Civil Action No. 4:09-cv-65.

9

with the recollection of other members of the Wanamaker family. Dusty, Anthony, Travis and Tim Wanamaker all testified or affirmed the family had conversations with Mackie about insuring the nurseries for the 2006 crop year and believed he was still affiliated with Summitville Crop Insurance Agency [Docs. 44 at PageID#: 204-05, 45 at PageID#: 214-15, 46 at PageID#: 220-21, 47 at PageID#: 229-30, and 49 at PageID#: 250-51]. Anthony also testified that the family would have followed Mackie's advice about how to insure the nurseries and that Mackie was their only source of information about how to properly insure the nurseries [Doc. 45 at PageID#: 34]. Additionally, Anthony and Dusty both submitted forms which indicate Mackie's involvement in cancelling insurance with Farmers Crop Insurance Alliance. Dusty's form was signed by Mackie with "Summitville Crop Ins." on September 28, 2005 for the 2006 crop year [Doc 44 at PageID#: 208]. Anthony's form is called a Change/Application and Cancellation Form and is not signed by Mackie, but indicates that he is the agent with Summitville Crop Insurance, and the form was completed for the 2006 crop year [Doc. 49-2].[5]

The Court also has before it a document titled "Richard Mackie DBA Summitville Crop Insurance of the Southeast," which solicits insurance policies for the 2006 crop year, but states at the bottom that Mackie has left Summitville Crop Insurance and now has his own office [Doc. 47

---

[5] Mackie asserts documentation provided with respect to insurance policies with Farmers Crop Insurance Alliance is irrelevant because the instant case involves a policy with NAU. Anthony, Travis and Tim submitted multiple documents entitled "Schedule of Coverage" for policies held with Farmers Crop Insurance Alliance which indicate that Mackie is the agent for Summitville Crop Insurance [Docs. 46 at PageID#: 223-27, 47 at PageID#: 233-37, and 49-1]. The documents are dated November 3, 2005 and June 20, 2006 [*id.*]. Although these documents may tend to show that Mackie was holding himself out as affiliated with Defendant Summitville Crop Insurance Agency as of those dates, the Court did not explicitly consider these documents in reaching its decision that genuine issues of fact exist because there was ample other evidence from which to draw that conclusion. The relevance of such documents in the instant case is unclear at this time.

at PageID#: 232]. At this stage, it is unclear to the Court whether "Summitville Crop Insurance of the Southeast" is a different entity than "Summitville Crop Insurance" or even Defendant "Summitville Crop Insurance Agency." A trier of fact may conclude Mackie was representing himself to members of the Wanamaker family as still being affiliated with Defendant Summitville Crop Insurance Agency for the 2006 crop year, even in light of the statement in the letter that he has left "Summitville Crop Insurance" and now has his own office.

While it may be true that Mackie did not sign any applications as an agent for Summitville Crop Insurance Agency for the 2006 crop year and did not assist in preparing the PIVR to accompany the insurance application for the Nursery, the evidence presented by Plaintiffs creates disputed material facts as to Mackie's affidavit claims that he did not sell insurance policies to Plaintiffs, did not represent to Plaintiffs that he had procured insurance, and did not make any representations to Plaintiffs about insurance policies for the 2006 crop year [Doc. 38-1]. As it stands, Mackie's involvement with Defendant Summitville Crop Insurance Agency during the process of completing applications for the 2006 crop year is disputed, and the evidence as to Mackie's statements to Plaintiffs could implicate Mackie's liability for Plaintiffs' claims for failure

to procure insurance and for negligent misrepresentation.[6]

Accordingly, the Court concludes that genuine issues of material fact exist in this case as to Defendant Mackie and that the entry of summary judgment for Mackie would be inappropriate at this time.

## V. CONCLUSION

For the reasons explained above, the Court **ORDERS** that Plaintiffs' motion to consider its late-filed exhibits [Doc. 51] is **GRANTED** and Defendant Mackie's motion for summary judgment [Doc. 38] is **DENIED**.

SO ORDERED.

ENTER:

                                                 s/ *Susan K. Lee*
                                                 SUSAN K. LEE
                                                 UNITED STATES MAGISTRATE JUDGE

---

[6] Mackie urges the Court in his reply brief [Doc. 53] to grant the motion because Plaintiffs failed to respond to Mackie's statement of undisputed material facts ("statement") [Doc. 40]. Mackie cites to Fed. R. Civ. P. 56(e) in support of this request, which reads that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." Although Mackie is correct that Plaintiffs did not respond to the statement, it does not follow that Plaintiffs' failure to do so results in Plaintiffs' failure to address the assertions of fact contained therein. Mackie submitted, in support of his motion, Plaintiffs' responses to Mackie's requests for admission [Doc. 38-5], in which Plaintiffs responded to–and denied–many of the same assertions made in Mackie's statement. Furthermore, Plaintiffs' response in opposition and supporting materials respond directly to the statements in Mackie's affidavit, which were reproduced in the statement, and there is no doubt that Plaintiffs consider these facts to be disputed. Accordingly, the Court declines Mackie's invitation to grant summary judgment for this reason, and the Court finds that Plaintiffs adequately responded to the purportedly undisputed facts presented by Mackie.

12